UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY HOMMES, | ) | CASE NO. 1:12CV12 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF | ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Stacey Hommes ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint with prejudice:

I. **PROCEDURAL AND FACTUAL HISTORY**

On March 11, 2008, Plaintiff applied for SSI, alleging disability beginning September 28, 2007. Tr. at 137.[1] The SSA denied Plaintiff's application initially and on reconsideration. Tr. at 79-80. On April 7, 2009, the SSA acknowledged Plaintiff's request for an administrative hearing. Tr. at 74. On May 14, 2010, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. Tr. at 36-64. At the hearing, Samuel E. Edelmann, a vocational expert ("VE") was present but did not offer any testimony. On June 3, 2010, the ALJ issued a Decision denying benefits. Tr. at 16-30. Plaintiff filed a request for review, and, on October 28, 2011, the Appeals Council denied Plaintiff's request for review. Tr. at 1-6.

---

[1]According to Plaintiff's brief, she filed a subsequent application for SSI and was awarded benefits as of September 21, 2010, the date of the subsequent application.

On January 3, 2012, Plaintiff filed the instant suit seeking review of the Decision.  ECF Dkt. #1.  On July 11, 2012, with leave of the Court, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  On August 27, 2012, Defendant filed a brief on the merits.  ECF Dkt. #15.  With leave of the Court, Plaintiff filed her reply brief on September 21, 2011.  ECF Dkt. #18.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from anxiety disorder, major depressive disorder, obsessive compulsive disorder, and substance abuse disorder (alleged to be in remission), which qualified as severe impairments under 20 C.F.R. §416.920(c). Tr. at 21. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. 404.920(d) ("Listings").  Tr. at 22.

The ALJ first concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but she would be unable to meet the basic demands for sustained work activity due to her substance abuse disorder. Tr. at 23.  However, the ALJ ultimately concluded that, if Plaintiff stopped abusing alcohol and drugs, she would have the residual functional capacity to perform a full range of unskilled work at all exertional levels that involved minimal public interaction.  Tr. at 28.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V.    ANALYSIS

As an initial matter, it is important to note that Plaintiff was abusing drugs and alcohol during the period she claims to have been disabled.  Since 1996, the Social Security Act, as amended, has precluded awards of SSI benefits based upon alcoholism and drug addiction.  See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; see also *Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir.2004).  The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to her disability.  See *Zarlengo v. Barnhart*, 96 F. App'x 987, 989–90 (6th Cir.2004).  Further, the record reveals that Plaintiff has served at least two months in prison since her alleged onset date.  Plaintiff is not eligible for SSI benefits for any month she was confined to jail or prison. 42 U.S.C. §§ 402(x)(1)(A), 1382(e)(1)(A); 20 C.F.R. §§ 404.468, 416.1325.

Plaintiff, who was thirty-seven years old on the day of the hearing, testified that she lives with her nineteen year-old son, who attends college, and her girlfriend.  Tr. at 42.  Plaintiff completed the ninth grade but later received her GED.  Her previous employment included telephone customer service, retail sales, fundraising, construction, and bartending.  Tr. at 42-48.  She last worked in 2007.  Tr. at 55.

As a child, Plaintiff was molested for ten years (between the ages of four to fourteen) by five different men.  Tr. at 165, 193.  She has been diagnosed with various mental disorders, which appear to result from the trauma she suffered during her childhood.  With respect to her daily activities, Plaintiff testified that she cries all morning at least five days a week.  Tr. at 49.  She takes Seroquel and Luvox to treat her depression.  She testified that the medication is not helping her because she is still depressed and crying "a lot."  Plaintiff has anger management problems. Tr. at 52.  She suffers panic attacks and does not like to be around other people.  Tr. at 54.  Plaintiff has no hobbies and does not attend any social functions.  Tr. at 52-53. She testified that she prefers to work alone, giving the example of cleaning the house.  Tr. at 56.  She is prescribed Alprazolam and Xanax for

-4-

anxiety.  Tr. at 54, 57.  She spends most of the day in bed.[2]  Tr. at 61.

Plaintiff has had a lengthy history of drug and alcohol abuse both prior to and after her alleged onset date.  In September of 2004, Plaintiff was admitted to King's Daughter's Medical Center for Benzodiazepine Withdrawal, Sedative Hypnotic Dependence, Cocaine Dependence, and Panic Disorder with Agoraphobia.  Tr. at 251.  She underwent detoxification protocol with Ativan and Neurontin and was discharged with prescriptions for Ativan and Nuerontin.

On April 26, 2005, Plaintiff sought treatment at the Ashtabula County Medical Center, reporting irritability, nervousness, anxiety, depression, and a history of self-mutilation.  Tr. at 407. Todd Gates, D.O., diagnosed Plaintiff with Bipolar Disorder Type II with a mild hypomanic episode versus a Benzodiazepine Withdrawal Mania versus ADD with Hyperactivity in Adulthood, Xanax Dependence, and post-traumatic stress disorder ("PTSD").  He acknowledged that Plaintiff had been dependent on Benzodiazepine for several years.  Tr. at 406.  Dr. Gates prescribed Klonopin, Keppra, Seroquel, and Abilify.  Tr. at 407. At a September 6, 2005 appointment, Plaintiff conceded that she had used crystal meth within the previous two months, and that she would test positive for THC and Oxycontin if she was drug tested during a job interview.  Tr. at 415.

Plaintiff returned to the Ashtabula County Medical Center  on February 12, 2008 (after returning to Ohio from Kentucky) with a head injury.  Tr. at 513.  The medical notes from the emergency room indicate that she was changing her story on how the injury occurred and "demanding Dilaudid."

On May 16, 2008, Plaintiff underwent a mental functional capacity assessment by James Cozy, MA, on behalf of Ashtabula County Department of Job and Family Services.  Tr. at 400.  Mr. Cozy concluded that Plaintiff was extremely limited in virtually all categories relating to understanding and memory and social interaction, but found no limitation in her ability to ask simple questions or request assistance or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Mr. Cozy noted that Plaintiff suffered panic attacks and a depressed mood as a result of PTSD.  Tr. at 401.  However, Mr. Cozy did not acknowledge any

---

[2]Plaintiff alleged debilitating pain in her back, as well as emotional problems, but the ALJ concluded however that this appeal is predicated exclusively upon Plaintiff's mental impairments.

previous or current alcohol or drug abuse by Plaintiff, or its effect on her functional capacity.

In September of 2008, Richard Halas, MA, conducted a consultative examination. Plaintiff denied any problems with alcohol or drugs. Tr. at 447. Mr. Halas diagnosed bipolar disorder and borderline personality disorder. He completed the same form as Mr. Cozy, and concluded that Plaintiff was either extremely limited or markedly limited in all areas, with the exception of her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions, which were moderately limited, and her ability to ask simple questions or to request assistance , which was not significantly limited. Tr. at 453. Mr. Halas acknowledged that Plaintiff showed a high score on substance abuse issues. She achieved a score of twenty-five, with the cutoff for severe drug and alcohol addictapotentiality at twenty-four. Tr. at 449. However, Mr. Halas did not diagnose substance abuse disorder, nor did he comment  on Plaintiff's alcohol or drug use at the time of the assessment.

Alice Chambly, Psy. D., reviewed Plaintiff's file on December 2, 2008. Tr. at 456. She diagnosed personality disorders and substance abuse disorders. Dr. Chambly acknowledged that the degree of Plaintiff's polysubstance was unknown. Tr. at 464. She concluded that Plaintiff was mildly restricted in her activities of daily living, and moderately limited in her social functioning and her ability to maintain concentration, persistence, and pace, with no episodes of decompensation. Tr. at 466.

In May of 2009, Plaintiff returned to Dr. Gates for treatment of her PTSD and panic disorder. Tr. at 426.  Dr. Gates' May 5, 2009 notes do not indicate any ongoing alcohol or drug abuse. Plaintiff began a Suboxone program in November of 2009, which was overseen by Sarbjot Ajit, M.D. She conceded that she had suffered from pill and opioid addiction for ten years and that she could not tolerate withdrawal symptoms. Tr. at 637. She testified at the hearing, approximately six months after beginning Suboxone treatment, that she was "doing pretty well on it," and that she was not having any cravings for drugs and alcohol. Tr. at 50. She further testified that she had been clean since November of 2009. Tr. at 51.

Plaintiff advances two arguments in this appeal. First, Plaintiff contends that the ALJ erred when he did not give controlling weight to the opinions of treating physicians, Dr. Gates and Dr.

-6-

Ajit.  Both physicians opined that Plaintiff had marked limitations that would prevent her from performing full-time work even if she was not abusing drugs and alcohol.  However, the ALJ concluded that Plaintiff's ongoing drug use, coupled with her treating physicians' lack of awareness of her ongoing drug use, tainted their mental residual capacity assessments.  Second, Plaintiff argues that the ALJ erred in weighing her credibility.  However, the ALJ relied upon numerous incidents in the record to Plaintiff's surreptitious alcohol and drug abuse when he discounted the credibility of her testimony.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.   A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  If  that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his

case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

Where a treating physician's opinion cannot be given controlling weight, it must be weighed under a number of factors set forth in the Commissioner's Regulations—"namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004)(citing 20 C.F.R. § 404.1527(d)(2)). Opinions of one-time examining physicians and record-reviewing physicians and medical experts who testify during administrative hearings are also weighed under these same factors, including supportability, consistency, and specialization. See 20 C.F.R. § 404.1527(d), (f).

Both Dr. Gates and Dr. Ajit provided assessments of Plaintiff's mental residual functional capacity.  In a Medical Statement Re: Mental Impairment(s) with Possible Substance Abuse form dated August 19, 2009, Dr. Gates, who treated Plaintiff sporadically from between April 26, 2005 and May 5, 2009, diagnosed Plaintiff with Post-Traumatic Stress Disorder, Panic Disorder, and Major Depression.  Tr. at 607. He further concluded that Plaintiff had a marked impairment in virtually every category provided, with the exception of "us[ing] of good judgment" and "perform[ing] simple task[s]," in which he concluded that Plaintiff was only moderately impaired. Tr. at 606-608.  Dr. Gates opined that Plaintiff's condition would deteriorate if she was placed under the stress of a job, and that she would be absent from work  more than three times a month.  The form reads, in pertinent part, "If drug addiction or alcoholism (henceforth 'DAA') is a contributing factor material to claimant's impairment, please confine your assessment to [her] condition if [she] stops using alcohol/drugs; if it's not possible to separate the mental restrictions and limitations imposed by DAA for the various other mental disorders, there is a 'not material' finding." Tr. at 660. However, Dr. Gates observed on the form that Plaintiff was not currently abusing drugs or alcohol. Tr. at 662.

The ALJ acknowledged that Dr. Gates was a treating physician[3] but rejected his assessment due to his observation that Plaintiff was not abusing drugs or alcohol when the assessment was completed.  Plaintiff testified that she had been clean since she began the Suboxone regimen in November of 2009, and, as a consequence, the ALJ recognized that Plaintiff was abusing drugs  and alcohol in August of 2009, when the form was completed.  Furthermore, Dr. Ajit's medical notes from November 29, 2002 read, in pertinent part, "[Plaintiff] [r]ecently told Dr. Gates of her

---

[3]Dr. Gates saw Plaintiff at one appointment following her alleged onset date. Dr. Gates' May 5, 2009 notes read in pertinent part:

> [Plaintiff] is here today after living in Kentucky for the past several years.  She continues to struggles with  posttraumatic stress disorder issues, features of panic disorder, and severe anxiety.  She has been on Zoloft and Klonopin and would like to resume her old regimen. . .patient remains depressed and unable to concentrate for any type of gainful employment. She has again applied for disability to have this resolved.

Tr. at 426.

-9-

addiction and referred here [sic]." Tr. at 637. Plaintiff argues that the form specifically instructed Dr. Gates to assess Plaintiff's limitations as if she was not abusing drugs and alcohol. However, Dr. Gates labored under the misconception that Plaintiff was drug-free at the time of the assessment. Therefore, his opinion of her residual functional capacity is predicated upon her behavior during the assessment, in which she was, unbeknownst to him, still abusing drugs. Accordingly, the undersigned recommends that the Court find that Dr. Gates' assessment deserves little weight and that the ALJ did not err in disregarding Dr. Gates' opinion.

Dr. Ajit completed a Bipolar Disorder and Related Conditions form on March 28, 2010, which indicated he that he had been treating Plaintiff for approximately four months[4], since she began Suboxone treatment on November 29, 2009. Tr. at 645-650. Under the heading "General Limitations Caused by Mental Illness," Dr. Ajit did not identify any limitations of Plaintiff's activities of daily living, although it is important to note that "none" was an option. Dr. Ajit further opined that Plaintiff was extremely limited in her ability to maintain social functioning, that deficiencies were present in her concentration, persistence, and pace, and she would experience repeated episodes of deterioration or decompensation in work or work-like settings. Tr. at 645. Dr. Ajit concluded that Plaintiff was markedly or extremely impaired in virtually every aspect of the listed work limitations, with the exception of her ability to ask simple questions, be aware of normal hazards, and take appropriate precautions, and to travel to unfamiliar places using public transportation, where Dr. Ajit found only moderate limitations. Tr. at 646. Dr. Ajit observed that Plaintiff's condition had been substantially the same since September 28, 2007. Tr. at 648.

Another form, captioned "Medical Statement Re: Bipolar With Possible Substance Abuse," was completed by Dr. Ajit. The form reads, in pertinent part, "To the extent that it is possible to do so, do not consider any limitation imposed by any co-existing substance abuse in answering the questions below. Consider only the psychiatric illnesses apart from any substance abuse. If you cannot separate out what limitations may be due to the psychiatric illnesses apart from the substance

---

[4]The form indicates that the most recent visit was on April 24, 2010, but the form is dated March 28, 2010. Accordingly, it appears that Dr. Ajit had actually been treating Plaintiff for three months when the form was completed.

-10-

abuse from those which may be due to the substance abuse, please complete the form based upon all of the claimant's psychiatric disorders, including the substance abuse." Tr. at 647.  On the form, Dr. Ajit diagnosed Plaintiff with Bipolar Disorder and Obsessive Compulsive Disorder, and acknowledged that Plaintiff used drugs to self-medicate.  Tr. at 647.

> The ALJ provided the following analysis of Dr. Ajit's assessment:
>
> In November 2009, the claimant insisted that she wanted to quit using illicit drugs and narcotic medication.  Treating physician Dr. Sarbjo [sic] Ajit prescribed Suboxone to help the claimant taper off these drugs.  However, in January 2010, treating pain management pain specialist Dr. Sharistha Peerzade discharged the claimant from her practice after the claimant failed to inform her of her Suboxone treatment and requested Percocet for pain.  In March 2010, Dr. Ajit notes that the claimant used drugs to self-medicate, even though he noted marked to extreme limitations in his assessment of the claimant's ability to perform work-related activity.
>
> It is clear from the record that the claimant has not sufficiently attempted to refrain from polysubstance abuse, and this abuse substantially contributes to her mental health problems.

Tr. at 26 (citations to the record omitted.)

Dr. Peerzade began treating Plaintiff for low back pain, chronic pain, and an upper respiratory tract infection on November 18, 2009.  Plaintiff signed a pain contract, and Dr. Peerzade prescribed Percocet.  Tr. at 641-642.  Dr. Peerzade's medical notes from Plaintiff's November 18, 2009 appointment read, in pertinent part, "I have discussed pain contract with the patient. She signed the contract. It was discussed at length the [patient] should not be taking any more prescription [medications]  from other physicians. . .[Patient] has agreed to it."  Tr. at 642. However, Dr. Peerzade stopped treating Plaintiff after her second office visit on January 28, 2010, when, following that appointment, Dr. Peerzade was informed by Plaintiff's pharmacy that she was undergoing Suboxone treatment.  Tr. at 641.  Dr. Peerzade's notes indicate that she discontinued the Percocet prescription and declined to continue her pain management treatment due to Plaintiff's failure to inform Dr. Peerzade that she was undergoing Suboxone treatment.  Tr. at 641.

Plaintiff argues that the ALJ did not identify the weight given to Dr. Ajit's opinion (although it is clear that no weight was given), nor did the ALJ provide an explanation for the weight given to  Dr. Ajit's opinion.  In fact, the ALJ concluded that Plaintiff continued to abuse prescription medication, that is, Percocet, after she began Suboxine therapy, as, as a consequence, he concluded

-11-

that Dr. Ajit's assessment suffers from the same defect as Dr. Gates' assessment.  In other words, the ALJ concluded that Dr. Ajit's assessment is flawed because it was based upon Plaintiff's condition when she was still surreptitiously using drugs.

In addition, the ALJ acknowledged that Dr. Ajit's assessment was not supported by his own treatment notes.  The ALJ provided the following summary of Dr. Ajit's medical records:

> Although the claimant reported severe limitations in interacting with people, and working outside her home, Dr. Ajit reported that the claimant continued to improve with treatment and counseling.  He noted that the claimant continued to be compliant with [S]uboxone, even though Dr. Peerzade indicated that the claimant sought Percocet through pain management.  In March 2010, Dr. Ajit reported that the claimant's mental status examination was normal with exception of cognition (fair), and short-term memory(fair).

Tr. at 29 (internal citations omitted.)  Because the ALJ discounted Dr. Ajit's opinion based upon evidence of Plaintiff's continued drug abuse at the time of the assessment, and Dr. Ajit's treatment records, which were inconsistent with Plaintiff's alleged extreme limitations, the undersigned recommends that the Court find that the ALJ did not violate the treating physician's rule.

In her reply brief, Plaintiff likens the facts in this case to the facts in *Lightfoot v. Astrue*, 2011WL4431183 (N.D.Ohio, September 22, 2011).  However, in *Lightfoot,* the assessment of the treating physician was not predicated upon the assumption that the claimant had stopped using drugs and alcohol.  Moreover, the ALJ in that case claimed to give great weight to the opinion of the treating physician, while reaching the opposite conclusion regarding the claimant's mental residual functional capacity. Accordingly, *Lightfoot* is distinguishable.

Turning to Plaintiff's second argument, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec*., 406 Fed. Appx. 977, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011), unpublished, citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390(6th Cir. 2004).  However, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters,* 127 F.3d at 530.

The ALJ reached the following conclusion with respect to the credibility of Plaintiff's testimony:

> If the claimant stopped the substance abuse, the undersigned finds that the claimant's

medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment for the reasons explained below.

Tr. at 29. Plaintiff argues that the ALJ provided no explanation for discrediting Plaintiff's testimony at the hearing. The ALJ's analysis actually preceded the foregoing paragraph, and, therefore, Defendant argues that Plaintiff relies upon a typographical error in support of her second argument. In fact, the ALJ recounts numerous instances of Plaintiff failing to disclose her alcohol and drug abuse in the record, including her failure to disclose her Suboxone treatment to Dr. Peerzade in January of 2010, after she claimed she was "clean." Accordingly, the undersigned recommends that the Court find that the ALJ sufficiently articulated his reason for discounting Plaintiff's allegations with respect to the degree of her impairments.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint with prejudice:


DATE: September 26, 2012

        */s/George J. Limbert*
        GEORGE J. LIMBERT
        UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).